UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LAURIE HOOD,

        Plaintiff,

  v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

        Defendant.

Civ. No. 07-1634-FCD/EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on plaintiff Laurie Hood's ("plaintiff") motion for leave to file a first amended complaint pursuant to Federal Rule of Civil Procedure[1] 15(a)(2).[2] Defendant Hartford Life and Accident Insurance Co. ("defendant")

---

[1] All further references to a "Rule" are to the Federal Rules of Civil Procedure.

[2] Because a pretrial scheduling order is in place, the court construes plaintiff's motion under Rule 16(b) as a motion to modify the pretrial scheduling order to permit the filing of an amended complaint.

1

opposes the motion.[3]

## BACKGROUND

On August 9, 2007, plaintiff filed a complaint against defendant alleging causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing (commonly known as an insurance "bad faith" claim) with respect to an insurance contract. Plaintiff alleges she was insured by a group long term disability policy issued by defendant. (Pl.'s Compl., filed Aug. 9, 2007 ("Compl."), ¶ 5.) In 1990, plaintiff alleges she became disabled within the meaning of the policy, submitted her claim, and began receiving benefits from defendant. (Id. ¶¶ 7-9.) Defendant paid benefits from November 1, 1990 to June 27, 2007, at which time defendant allegedly improperly terminated plaintiff's benefits. (Id. ¶¶ 8-14.) In conjunction with the bad faith cause of action, plaintiff alleges defendant's actions in denying her benefits constituted malice, oppression, or fraud, entitling plaintiff to punitive damages under California Civil Code § 3294. (Id. ¶ 21.)

By this motion, plaintiff seeks leave to amend her complaint to add a request for treble damages pursuant to California Civil Code § 3345, which she contends allows such damages when a disabled person has a statutory right of action authorizing fines, penalties, or other civil remedies, like her Section 3294 claim. Defendant opposes plaintiff's motion, arguing plaintiff (1) has not shown good cause to permit amendment under Rule 16

---

[3] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

and/or (2) is precluded by law from alleging a Section 3345 claim under her alleged facts.

**STANDARD**

Once the court has entered a pretrial scheduling order pursuant to Rule 16, the standards of Rule 16 rather than Rule 15 govern amendment of the pleadings.  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992); Eckert Cold Storage, Inc. v. Behl, 943 F. Supp. 1230, 1232-33 (E.D. Cal. 1996).

A scheduling order is not "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985).  The pretrial scheduling order is designed to allow the district court to better manage its calendar and to facilitate more efficient disposition of cases by settlement or by trial.  See Mammoth Recreations, 975 F.2d at 610-11; Fed. R. Civ. P. 16 advisory committee notes (1983 amendment).

Orders entered before the final pretrial conference may be modified only "upon a showing of good cause." Fed. R. Civ. P. 16(b).  The good cause requirement of Rule 16 primarily considers the diligence of the party seeking the amendment.  The pretrial scheduling order can only be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." Mammoth Recreations, 975 F.2d at 609.  When evaluating whether a party was diligent, the Ninth Circuit has determined that "the focus of the inquiry is upon the moving party's reasons for modification.  If that party was not diligent, the inquiry should end." Id. at 610; see also Gestetner, 108 F.R.D. at 141.

3

1     When the proposed modification is an amendment to the
2 pleadings, the moving party may establish good cause by showing
3 "(1) that [he or she] was diligent in assisting the court in
4 creating a workable Rule 16 order; (2) that [his or her]
5 noncompliance with a rule 16 deadline occurred or will occur,
6 notwithstanding [his or her] diligent efforts to comply, because
7 of the development of matters which could not have been
8 reasonably foreseen or anticipated at the time of the Rule 16
9 scheduling conference; and (3) that [he or she] was diligent in
10 seeking amendment of the Rule 16 order, once it became apparent
11 that [he or she] could not comply with the order." Jackson v.
12 Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999)(citations
13 omitted).

14     Only after the moving party has demonstrated diligence under
15 Rule 16 does the court apply the standard under Rule 15 to
16 determine whether the amendment was proper. See Mammoth
17 Recreations, 975 F.2d at 608; Eckert Cold Storage, 943 F. Supp.
18 at 1232 n.3. Pursuant to Rule 15(a), "leave [to amend] is to be
19 freely given when justice so requires." "[L]eave to amend should
20 be granted unless amendment would cause prejudice to the opposing
21 party, is sought in bad faith, is futile, or creates an undue
22 delay." Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir.
23 1997).

**ANALYSIS**

**A.  Good Cause Under Rule 16**

26     The court first considers whether plaintiff has satisfied
27 Rule 16 by diligently seeking to modify the pretrial scheduling
28 order to amend her complaint. Defendant argues plaintiff cannot

4

make the requisite showing because the deadline for amendments, as set forth in the pretrial scheduling order, has long since passed. (Opp'n, filed June 24, 2008, at 19-20.) However, plaintiff alleges she first discovered facts supporting her claim for treble damages under Section 3345 during recent depositions. (Pl.'s Mem. of P. & A. in Supp. of Mot. to Amend, filed June 9, 2008 ("Motion"), at 3:2-3.)

To establish a claim for treble damages under Section 3345, a cause of action must: (1) be brought by a senior citizen or disabled person; (2) redress unfair or deceptive acts or practices; (3) relate to a separate statutory claim providing entitlement to certain penalties; and (4) the defendant's wrongdoing must be directed to the protected class. Cal. Civ. Code § 3345.[4] Plaintiff contends the depositions of Drs. Abdul Khaleq and Gregg Nulton, discussing the nature, severity, and consequences of plaintiff's Crohn's disease, provided information to substantiate her disability and classification as a disabled person under the statute. (Motion, at 3:3-5; Green Decl., filed July 3, 2008, Exs. A & B.) Plaintiff also maintains the

---

[4] Namely, Section 3345 provides with respect to each of these elements the following: (1) "[t]his section applies only in actions brought by, on behalf of, or for the benefit of senior citizens or disabled persons;" (2) the statute seeks "to redress unfair or deceptive acts or practices or unfair methods of competition;" (3) it applies "[w]henever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter, and the amount of the fine, penalty, or other remedy is subject to the trier of fact's discretion;" and (4) as applicable here, the trier of fact must find that "the defendant knew or should have known that [its] conduct was directed to one or more senior citizens or disabled persons."

5

deposition of Dr. Bryant revealed defendant's "intentional disregard for [plaintiff's] interests," because his testimony demonstrated that defendant did not consider physical accommodations that plaintiff would require.  (Id. at 3:14-26.)  Plaintiff asserts Dr. Bryant's testimony relates not only to her claim of "malice" sufficient to seek punitive damages, but it also establishes an entitlement to treble damages under Section 3345(b)(1) as his testimony demonstrates defendant knew or should have known that it was wrongfully terminating the benefits of a disabled person.

The court agrees with plaintiff that the aforementioned deposition testimony further established plaintiff's disability and defendant's alleged constructive knowledge that they were terminating the benefits of a disabled person, so as to give rise to a Section 3345 claim.

To demonstrate "good cause" to amend, plaintiff also emphasizes that shortly before the depositions, the decision in Ross v. Pioneer Life Insurance Co., 545 F. Supp. 2d 1061 (C.D. Cal. 2008) was issued.  That decision, which was the first case to apply Section 3345 to a punitive damages claim under Section 3294, made plaintiff aware of the viability of a claim for treble damages in this case.  (Motion, at 3:7-13.)

In Ross, the plaintiff brought a bad faith claim against her insurance company, alleging that it wrongfully terminated her long-term care benefits.  She also alleged a Section 3294 claim for punitive damages against the defendant.  During discovery, depositions taken from the defendant's claims representatives established that the defendant had acted with "institutional

6

reckless disregard of [the plaintiff's] rights." Ross, 545 F. Supp. 2d at 1063. Months after the discovery cut-off, the plaintiff moved to amend her complaint to add a Section 3345 claim by virtue of her senior citizen status. Id. The Ross court found that, despite the late filing of the motion for leave to amend the complaint, the defendant would not be prejudiced by granting the motion. Id. at 1065. Ultimately, the court found that the text of Section 3345, supported by the legislative history, authorized its application to the plaintiff's Section 3294 claim. Id. at 1067. The subject claims, timing of the motion to amend, and opposition in Ross are essentially the same as this case.[5]

    After issuance of the Ross decision and the doctors' depositions, plaintiff promptly requested defendant stipulate to adding the additional claim for damages. (Kantor Decl., filed June 9, 2007, Exs. A-3, A-4, A-5.) Defendant would not agree, and plaintiff quickly filed the present motion for leave to amend. (Id. Ex. B-6.) Indeed, while plaintiff's motion was filed one week after the cut-off for discovery and nine months after the filing of the complaint, it was substantially more timely than the motion granted in Ross. Like in Ross, this court does not believe that discovery will need to be reopened, that trial will be delayed, or that defendant will be prejudiced by allowing the amendment. Ross, 545 F. Supp. 2d at 1065.

---

[5] The court notes that in Ross the pretrial scheduling order did not contain a cut-off date for amendment of the pleadings. Ross, 545 F. Supp. 2d at 1064, n.1. Therefore, the Ross court did not address Rule 16 or require modification of the scheduling order.

7

Therefore, the court finds that the cumulative effect of the depositions, the Ross ruling, and plaintiff's quick response in seeking a stipulation and moving to amend, all demonstrate plaintiff's diligence and show good cause as required under Rule 16.

**B.    Leave to Amend under Rule 15**

Defendant alternatively argues that plaintiff's request to add a Section 3345 claim should be denied because, according to plaintiff's alleged facts, it is precluded by law, and thus, the proposed amendment is necessarily futile. (Opp'n, at 8.)  In moving to amend her complaint to include the Section 3345 request for damages, plaintiff relies solely on Ross for support. (Motion, at 3:7-8.)  Defendant opposes plaintiff's motion and the applicability of Ross on grounds that (1) allowing treble punitive damages could result in a damages award that is unconstitutional and (2) under California law, plaintiff may allege a Section 3345 claim only in reference to causes of action under the Unfair Competition Act ("UCA"), California Civil Code § 1750 *et seq.* or the Consumer Legal Remedies Act ("CLRA"), California Business & Professions Code § 17200 *et seq.*, which plaintiff has not done. (Opp'n, at 1.)  Accordingly, defendant argues that the court should reject the Ross holding and deny plaintiff leave to amend.

**1.    Constitutionality of Treble Punitive Damages**

Defendant argues that trebling punitive damages violates constitutional due process. (Id.)  However, defendant has cited no authority holding that trebled punitive damages are per se

8

unconstitutional.[6]  Indeed, courts to have considered the issue have held to the contrary.  The Ross court relied on In re Felton, 197 B.R. 881, 892 (N.D. Cal. 1996), which specifically held that Section 3345 may apply to a claim for punitive damages. Even if the ultimate potential for an unconstitutionally excessive damages award exists, this court does not find that *potential* to be an adequate basis to bar plaintiff's claim as a matter of law, particularly in light of the Ross and Felton decisions, which this court finds persuasive.

The court is further dissuaded from ruling that trebled punitive damages claim is unconstitutional as a matter of law because Section 3345(b) limits its trebling provision to fines, penalties and remedies that are "subject to the trier of fact's discretion."  See also In re Felton, 197 B.R. at 892 ("[O]nce a determination has been made that punitive damages should be awarded, [Section 3345] acts only as a discretionary multiplier.").  Upon finding liability under Section 3345, the trier of fact is allowed, but not required, to award damages up to three times that of the statutory punitive damages award. That discretion creates an additional level of protection against an unconstitutionally excessive damages award.

**2.   Unfair Competition**

Defendant argues that Section 3345 applies only to causes of action redressing "unfair or deceptive acts or practices or unfair competition" (referred to herein as "unfair practices")

---

[6] The cases cited by defendant address punitive damages generally, but do not address the issue of statutory trebling provisions.  (Opp'n, at 17.)

9

with respect to *consumer fraud*, specifically those causes of action brought under the CLRA and UCA. (Opp'n, at 9-13.) Defendant contends that since plaintiff has not alleged a CLRA or UCA cause of action, amending the complaint to include a Section 3345 claim for damages is prohibited by law, futile and should be denied. (Id. at 8.)

The court finds to the contrary. An analysis of the text and structure of the statute, as well as its legislative history, reveals that the legislature intended to extend Section 3345 to claims outside the UCA and CLRA.

**a. Text**

Plaintiff emphasizes that the express language of Section 3345 authorizes its application "[w]henever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter." (Motion, at 4.) Plaintiff asserts that since Section 3294 authorizes a statutory civil penalty, in the form of punitive damages, Section 3345 applies thereto. (Motion, at 4-5.) Defendant responds that plaintiff's argument fails to consider that the statute expressly limits its application to actions "to redress unfair or deceptive acts or practices or acts of unfair competition." (Opp'n, at 8:21-26.) Defendant argues that this language is a direct reference to the CLRA and UCA, and thus, the statute only applies to causes of action brought under those Acts. (Id. at 9:9-13.)

The text of the statute clearly indicates that Section 3345 applies to the UCA and CLRA, as both Acts prohibit "unfair practices." Indeed, Section 3345 expressly derives its

10

definitions of "senior citizens or disabled persons" from "subdivisions (f) and (g) of Section 1761" of the CLRA. Cal. Civ. Code § 3345(a). Nevertheless, despite the cross references and similar language, nothing in Section 3345 expressly limits its application to the UCA and CLRA. Presumably, other laws exist which also contain unfair practices to which Section 3345 could apply. For example, the Unfair Insurance Practices Act ("UIPA"), Cal. Ins. Code §§ 790 *et seq.*, also prohibits "unfair or deceptive practices or acts." Cal. Ins. Code § 790.03.[7] Therefore, the text alone is inconclusive as to the scope of the statute.

### b. Structure

However, the structure and placement of the statute in the Civil Code support a finding that Section 3345 is not restricted to the CLRA and UCA. Section 3345 was added to the Civil Code at the same time as Sections 1761 and 1780 of the CLRA were amended. Section 17206.1 was added to the UCA in the Business and Professions Code at the same time as well. If the legislature intended Section 3345 to be applied only to CLRA and UCA claims, they would have inserted its provisions into those Acts. Indicative of the legislature's ability to include exclusive remedies within an Act, Section 1780 of the CLRA contains exclusive remedial measures, explicitly mentioning disabled persons and senior citizens. Cal. Civ. Code § 1780(b). Instead, Section 3345 was inserted into the "general provisions of relief"

---

[7] The court notes, however, that the UIPA specifically preempts the UCA and CLRA with respect to claims brought under Section 790.03, which deals with unfair insurance practices and does not give a plaintiff a private right of action.

11

set forth in the Civil Code, establishing the legislature's intent to separate Section 3345 from the CLRA and UCA.

### c. Legislative History

Defendant cites the legislative history of Senate Bill No. 1157 (the "Bill") from the 1988 Regular Session, wherein Section 3345 was enacted, to support its argument that Section 3345 applies only to UCA and CLRA claims. (Opp'n, at 9-10.) Defendant emphasizes a memorandum produced by the Department of Consumer Affairs, the sponsor of the Bill, which summarized the statute's overall purpose as follows: "to strengthen unfair business practices laws and to provide greater protection for senior and disabled persons against consumer fraud." (Id. at 10:12-14.) Thus, defendant argues the stated purpose indicates that Section 3345 was only intended to apply to UCA and CLRA claims. (Id. at 10-13.)

The court disagrees. Nothing in the statement of purpose expressly limits Section 3345 to the CLRA and UCA. Moreover, the stated purpose given by the Bill's sponsor does not necessarily reflect the legislature's full intent in enacting the Bill. California Senator Ed Davis' introduction to the Bill states that "[e]xisting law provides for award of punitive damages to civil plaintiffs injured as a result of certain unlawful acts involving oppression, fraud, or malice, and awarded in order to punish the defendant." 1988 Cal ALS 823 (Deering). This language, immediately preceding Section 3345, appears to have been pulled directly from Section 3294, demonstrating the legislature's intent to apply the trebling provision to claims brought thereunder. See Ross, 545 F. Supp. 2d at 1066 ("A review of the

12

1  legislative history of Civil Code § 3345 indicates that when it
2  was enacted it was expressly foreseen that the provision would be
3  applied to a trebling of punitive damages under Civil Code §
4  3294."). However, immediately following this language from
5  Section 3294, the introduction emphasizes that the Bill's
6  provisions are only available for actions that "redress *unfair or*
7  *deceptive acts or practices or unfair competition*." Id.
8     In assessing the significance of this statutory limitation,
9  the court finds important that Section 3294 is not a solitary
10 claim. Rather, it must be brought in conjunction with an
11 underlying cause of action, such as plaintiff's bad faith claim.
12 The Bill's constraining language, restricting application of
13 Section 3345 to causes of action redressing "unfair practices,"
14 suggests that the cause of action underlying the Section 3294
15 claim, or the criteria authorizing application of Section 3294,
16 must involve unfair practices. If the claim does not, Section
17 3345 would not be available. See, e.g., Thomas v. Doorley, 175
18 Cal. App. 2d 545 (1959) (applying Section 3294 to an assault and
19 battery claim); Maheu v. Hughes Tool Co., 569 F.2d 459 (9th Cir.
20 1977) (applying Section 3294 to a defamation claim). Therefore,
21 the court does not find, as plaintiff suggests, that the
22 legislative history supports a universal application of Section
23 3345 to Section 3294 claims.
24    In sum, as supported by the text and structure of the
25 statute, as well as its legislative history, the court finds that
26 Section 3345 is not restricted to claims brought under the UCA
27 and/or CLRA as defendant argues. Nor is it broad enough to apply
28 to all Section 3294 claims as plaintiff suggests. Succinctly

13

stated, Section 3345 may be applied to statutory claims, which provide for the requisite remedy described in Section 3345(b), that are alleged in conjunction with an underlying cause of action involving "unfair practices."  Therefore, with respect to Section 3294, which qualifies as a statute imposing one of the requisite remedies, a Section 3345 claim may be added *if* the underlying cause of action involves "unfair practices."[8]  The court turns to that question next.

### d.   Bad Faith as an Unfair Practice

Plaintiff alleges her punitive damages claim in relation to her bad faith cause of action.  The question becomes, in determining if Section 3345 can be applied, whether or not her bad faith claim is a cause of action redressing "unfair practices" within the meaning of Section 3345.

"Bad faith implies *unfair dealing* rather than mistaken judgment."  Cooper v. Travelers Indem. Co., 113 Fed. Appx. 198 (9th Cir. 2004) (internal citation omitted) (emphasis added).  Business practices involving bad faith may actually form the basis for a UCA violation.[9]  State Farm Fire & Casualty Co. v.

---

[8]   Section 3294 authorizes punitive damages when defendant has engaged in either "oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  The court does not rule on whether "fraud" sufficient to establish a Section 3294 claim could independently satisfy the "deceptive act or practice" requirement under Section 3345, thereby not requiring an underlying unfair practices claim, as plaintiff has focused on "malice" as the basis for her punitive damages claim.  (Compl., at 4:24-25).

[9]   The court notes that while a bad faith claim has the same general relationship to the CLRA as it does to the UCA, an actual CLRA cause of action may not be maintained if it is founded on an insurance contract.  The CLRA only applies to a sale or lease of consumer goods and services, and insurance in not a good or service within the meaning of the CLRA.  Fairbanks v. Superior Court, 154 Cal. App. 4th 435 (2007).  However, UCA

14

Superior Court, 45 Cal. App. 4th 1093, 1110 (1996). The UCA takes violations of other laws and treats them as unlawful practices that are independently actionable. Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377 (1992). Under the UCA, "[a]n *unlawful business practice or act* is an act or practice, committed pursuant to business activity, that is at the same time, forbidden by law." Klein v. Earth Elements, Inc., 59 Cal. App. 4th 965, 969 (1997) (internal citation omitted) (emphasis added).

Because breaching an implied covenant of good faith and fair dealing is forbidden by law, when it is done in the scope of business activity it forms the basis for an independent UCA claim. See id. Considering the relationship between a bad faith claim and the UCA, the court finds that plaintiff's bad faith cause of action, alleged against defendant while engaging in its business activities, is deemed to be an unfair practice within the meaning of Section 3345, even if a formal UCA violation has not been alleged.

Defendant cites two cases in which Section 3345 was held to be inapplicable with respect to insurance contracts. In Cobarrubias v. Allstate Ins. Co., 1998 WL 656571 (C.D. Cal. July 10, 1998), the court rejected the application of Section 3345 to a common law bad faith claim involving an insurance contract, holding that Section 3345 does not apply to "non-statutory" remedies. However, in the present case, plaintiff has alleged a statutory remedy under Section 3294, to which he seeks to apply

---

causes of action are not similarly prohibited. See discussion infra on Moradi-Shalal.

15

Section 3345. Nothing in the Cobarrubias decision prevents the court from applying Section 3345 to "statutory" remedies. Next, in Pagarigan v. Greater Valley Medical Group, Inc., 2006 WL 2425298 (Cal. App. 2 Dist. Aug. 23, 2006), the court rejected the application of Section 3345 to a negligence claim brought under the California Elder Abuse Act. The court stated that Section 3345 "is primarily directed at economic loss rather than physical harm." Id. at *20. Here, plaintiff has not alleged an Elder Abuse Act claim, but has alleged monetary damages incurred by defendant's bad faith termination of insurance benefits. (Compl. ¶¶ 18-20.) Thus, both of these cases are distinguishable.

### e.  Moradi-Shalal

Finally, defendant argues that the holding in Moradi-Shalal v. Fireman's Fund Ins. Co., 46 Cal. 3d 287 (1988), prohibits all of plaintiff's causes of action, not merely the Section 3345 claim for treble damages. (Opp'n, at 14:10-15.) Plaintiff's amendment would in fact be futile if there were no underlying causes of action to which Section 3345 could apply, and therefore, the court considers this argument.[10]

Defendant argues that plaintiff alleges facts implicating unfair insurance practices. (Id.) As such, defendant contends Moradi-Shalal restricts plaintiff's remedies to those provided by the UIPA, specifically under Section 790.03. (Id.) Defendant further contends that, according to Moradi-Shalal, Section 790.03 does not give plaintiff a private right of action, and she may not "plead around" it by alternatively alleging a UCA or CLRA

---

[10] Notably, defendant did not previously move to dismiss the complaint on this ground.

16

1 claim.  (Id.)  Therefore, defendant maintains plaintiff is
2 prohibited from alleging any private right of action, leaving no
3 cause of action to which Section 3345 may be applied.  (Id.)

4 　　　　Were defendant's argument to be accepted, insurance
5 companies would be immune from civil liability despite engaging
6 in unfair practices.  The court rejects defendant's proposition
7 as the controlling law is expressly to the contrary.  The Supreme
8 Court of California, in Manufacturers Life Insurance Co. v.
9 Superior Court of San Francisco, 10 Cal. 4th 257, 279-80 (1995),
10 clarified that the UIPA does not exempt insurance companies from
11 civil liability for unfair competition:  "This court did not, as
12 defendants argue, hold in Moradi-Shalal that insurers are subject
13 to common law, but not statutory, civil liability for
14 anticompetitive activities and unfair business practices."
15 Rather, the UIPA "preserves *any* preexisting civil or criminal
16 liability which the insurer might face under other *statutory* or
17 *decisional* law."  Id. at 280 (emphasis in original) (internal
18 citation omitted).  Moreover, "courts retain jurisdiction to
19 impose civil damages or other remedies against insurers in
20 appropriate common law actions;" one such example is a cause of
21 action for "breach of implied covenant of good faith and fair
22 dealing."  Id. (quoting Moradi-Shalal, 46 Cal. 3d at 304-05).  In
23 State Farm Fire & Casualty Co. v. Superior Court, 45 Cal. App.
24 4th 1093, 1106 (1996), the court held that:

25 　　　　While Moradi-Shalal clearly held that the Legislature
 　　　　did not intend to create new causes of action when it
26 　　　　enacted section 790.03, it is also clear that the
 　　　　legislature did not intend in any way to circumscribe
27 　　　　the previously existing common law right of an insured
 　　　　to seek redress for an insurer's fraudulent deception
28

17

> or breach of the covenant of good faith implied in the policy.

Furthermore, it has been specifically held that UCA causes of action are "independently actionable from 790.03," and that "Moradi-Shalal does not preclude [a plaintiff with a 790.03 claim] from stating a claim under the UCA." Diaz v. Allstate Ins. Group, 185 F.R.D. 581, 595 (C.D. Cal. 1998).

Although plaintiff *may* have brought a cause of action under Section 790.03, defendant has not cited any authority which requires her to do so. Even assuming defendant made such a showing and plaintiff's alleged facts do give rise to a UIPA violation, the Moradi-Shalal holding does not prevent plaintiff from alleging *other* applicable causes of action. Moradi-Shalal simply held that an actual claim for unfair insurance competition that would properly be brought under Section 790.03 may not be alternatively brought under the UCA, which would give plaintiffs a *new* private right of action. Moradi-Shalal does not prohibit plaintiff from pleading *existing* and/or *additional* causes of action that arise from the same facts as a UIPA violation.

Accordingly, the court finds that, despite any relationship between plaintiff's alleged facts and the UIPA, Moradi-Shalal does not prohibit plaintiff from alleging causes of action for bad faith and breach of contract or claiming statutory damages under Section 3294.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to modify the pretrial scheduling order to permit the filing of a first amended complaint, asserting a Section 3345 treble damages claim, is

18

GRANTED.  Plaintiff shall file and serve her first amended complaint within 15 days of the date of this order.  Defendant shall have 20 days after service thereof to file its response to the first amended complaint.

    IT IS SO ORDERED.

DATED: July 28, 2008

                                        FRANK C. DAMRELL, Jr.
                                        UNITED STATES DISTRICT JUDGE